UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT CINCINNATI

| | |
|---|---|
| JACK D. BUTLER, et al., | ) |
| Plaintiffs, | ) Case No.: 1:23-cv-00529 |
| vs. | ) Judge Michael R. Barrett |
| AUTO-OWNERS INSURANCE CO., | ) |
| Defendant. | ) |

**OPINION & ORDER**

This matter is before the Court on Defendant's Motion for Summary Judgment. (Doc. 19). Plaintiffs have filed a memorandum in opposition (Doc. 20), to which Defendant has replied (Doc. 21). For the reasons below, Defendant's Motion will be DENIED as to Plaintiffs' breach of contract claim and DENIED without prejudice to renew as to Plaintiffs' bad faith claim.

**I. FACTS**

Defendant Auto-Owners (Mutual) Insurance Company ("Auto-Owners") issued a homeowners policy to Plaintiffs Jack and Joyce[1] Butler. (Complaint, Doc. 4 ¶¶ 2, 4). The Butlers suffered a covered (windstorm) loss to their dwelling roof[2] on March 7, 2023,

---

[1] Mr. Butler testified that Mrs. Butler's memory "is sketchy at best" owing to a stroke she suffered eight years prior. Accordingly, she was not deposed in connection with this litigation. (Butler depo., Doc. 18-1 PAGEID 72 (5:16–6:17)).

[2] *See generally Olson v. State Farm Fire & Cas. Co.*, No. 1:23-cv-189, 2024 WL 4343033, at *3 (S.D. Ohio Sept. 30, 2024) (Hopkins, J.) ("[T]he parties here are not disputing what caused the damage to Olson's home.") (citing *Westview Vill. v. State Farm Fire & Cas. Co.*, 2022 WL 7178548, at *1 (N.D. Ohio Aug. 22, 2022)).

1

which fell within the policy term of January 14, 2023 to January 14, 2024. (Id. ¶ 8; Policy, Doc. 19-2 PAGEID 323).

According to Claim Representative Holly Brunswick, the subject loss was first reported to Auto-Owners on April 10, 2023. (Brunswick Aff., Doc. 19-1 ¶¶ 2–4; *see* Doc. 18-2). Brunswick called Mr. Butler (on April 13, 2023) "to explain the claim process" and advise that Reliable Adjusting Company Enterprises, Inc. ("Reliable") would evaluate the loss and provide an "independent" estimate. (Brunswick Aff., Doc. 19-1 ¶ 5).[3] Reliable's Ryan Rhoades conducted his inspection of the damaged property on April 25, 2023. (Id. ¶¶ 6, 7).

Reliable issued its Loss Report on May 3, 2023, which included findings, photo sheets, diagrams, and a payment recommendation. (Doc. 18-4). Wind damage was found on the left (but not on the right) slope of the dwelling roof. (Id. PAGEID 157). But, concerning the right slope, Rhoades noted (in text appearing underneath photo 14-Right Slope), "Two different types of shingles installed on the roof." (Doc. 18-4 PAGEID 165). Based on this finding, Auto-Owners determined it "did not owe a matching requirement as stated in Ohio Administrative Code, Rule 3901-1-54(I)(1)(b)" as to the dwelling roof. (Brunswick Aff., Doc. 19-1 ¶ 8). The next day, May 4, 2023, Brunswick told Mr. Butler that Auto-Owners would issue payment to replace the "damaged left-half" of the roof but would not pay for a "full roof" replacement. (Id. ¶ 10).

Key to understanding the underlying dispute, Mr. Butler re-roofed his home in 2016. (Jack Butler Aff., Doc. 20-1 ¶ 3).[4] Then, in 2018, he added a roof over the front porch patio, which effectively extended his dwelling roof. (Id. ¶ 4; Doc. 18-4 PAGEID 159

---

[3] Brunswick ended up leaving a voicemail. (Brunswick Aff., Doc. 19-1 ¶ 5).

[4] Mr. Butler did this work himself. (Butler depo., Doc. 18-1 PAGEID 96 (29:4–23)).

(1-Risk)). Mr. Butler testified that he "used the exact same shingles on my 2018 additional porch roof that I had used in 2016." (Jack Butler Aff., Doc. 20-1 ¶ 5 ("Same shingle, same store, same manufacturer.")). That said, the shingles on the right slope of the front porch patio roof were the ones that Rhoades labelled as "different" from the main roof. (*See* Doc. 18-4 PAGEID 165 (14-Right Slope)).

The parties agree that Ron Trusty, the Butlers' insurance agent, became involved in the claim process. (Brunswick Aff., Doc. 19-1 ¶¶ 11, 12; Jack Butler Aff., Doc. 20-1 ¶ 12). This led to Auto-Owners pulling a shingle from the (2016) main roof and sending it to ITEL for testing. (Brunswick Aff., Doc. 19-1 ¶ 13; Jack Butler Aff., Doc. 20-1 ¶ 14). (No shingle from the (2018) front porch patio roof was pulled for testing, however). ITEL's report, dated May 19, 2023, states that "[t]he original product is discontinued[,]" but identified a "matching" product. (Doc. 18-8 PAGEID 229). Thereafter, Auto-Owners issued a check for payment to the Butlers "for $7,287.79 under Dwelling coverage (the [Actual Cash Value] plus the recoverable depreciation), $685.54 under Other Structures coverage (the [Actual Cash Value] plus the recoverable depreciation) and $583.93 under Dwelling-Code Upgrade coverage, totaling $8,557.36." (Brunswick Aff., Doc. 19-1 ¶ 14). Mr. Butler did not cash this check, because "it wouldn't even do 10 percent of the problem." (Butler depo., Doc. 18-1 PAGEID 100 (33:13–17)).

Unhappy that Auto-Owners would not pay to replace the entire dwelling roof—to include the front porch patio addition/extension—the Butlers (first filed a complaint with the Ohio Department of Insurance and then) engaged the services of an attorney. (*See* Docs. 18-5, 18-10; Butler depo., Doc. 18-1 PAGEID 119 (52:3–12)). They initially filed suit in the Butler County, Ohio Court of Common Pleas, alleging breach of contract and

3

bad faith.  (Doc. 4 ¶¶ 14–19, 20–24).  Auto-Owners timely removed the case (Doc. 1) and now asks this Court to award it judgment as a matter of law as to both claims.

## II. LAW & ANALYSIS

**Summary Judgment Standard.**  Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A dispute is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A fact is "material" only if its resolution affects the outcome of the suit.  Id.  On summary judgment, a court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  The moving party has the burden of showing an absence of evidence to support the non-moving party's case.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  Once the moving party has met its burden of production, the non-moving party cannot rest on its pleadings, but must present significant probative evidence in support of its complaint to defeat the motion for summary judgment.  *Anderson*, 477 U.S. at 248–49.  Additionally, "[t]he court need consider only the cited materials, but it may consider other materials in the record."  Fed. R. Civ. P. 56(c)(3).

**Breach of Contract.**  "To establish a claim for breach of contract [in Ohio], a plaintiff must prove: (1) the existence of a contract, (2) performance by the plaintiff under the contract, (3) breach of the contract by the defendant, and (4) damages or loss resulting from the breach."  *Innovative Architectural Planners, Inc. v. Ohio Dep't of Admin. Servs.*, 2024-Ohio-824, 239 N.E.3d 942, ¶ 46 (Ohio App. 10 Dist. 2024) (citing, *inter alia*,

4

*Lucarell v. Nationwide Mut. Ins. Co.*, 152 Ohio St.3d 453, 97 N.E.3d 458, ¶ 41 (2018)).  A breach of contract occurs when a defendant does not perform one or more of the terms of the contract.  *DN Reynoldsburg, L.L.C. v. Maurices, Inc.*, No. 20AP-57, 2022 WL 872224, ¶ 18 (Ohio App. 10 Dist. Mar. 24, 2022) (citations omitted).

The Policy provides that Auto-Owners will not pay "more than the smallest" of either the policy limit or "the full cost to repair or replace the damaged covered property with property of **like kind and quality**."  (Policy, Doc. 19-2 PAGEID 340 (§ 6.b.(1)(b)) (emphasis added)).[5]  Separately, Auto-Owners acknowledges that its policy terms must—and argues that they do[6]—comply with the Ohio Administrative Code's ("OAC") "uniform minimum standards" for the "investigation and disposition" of property claims arising under insurance contracts issued to Ohio residents.  Ohio Admin. Code 3901-1-54(A).[7]  Relevant here, "[w]hen an . . . exterior loss requires replacement of an item and the replaced item does not match the quality, color or size of the item suffering the loss, the insurer shall replace as much of the item as to result in a **reasonably comparable appearance**."  Id. 3901-1-54(I)(1)(b) (emphasis added).  This Court has previously

---

[5] Auto-Owners denies that this policy term constitutes a "matching" requirement.  (*See* Motion, Doc. 19 PAGEID 312).

[6] (*See* Reply, Doc. 24 PAGEID 451 ("The subject policy complies with the standard set forth by O.A.C. 3901-1-54(I)(1)(b) by requiring materials of a 'like kind and quality' to be used in repairing or replacing the damaged covered property. . . . The shingle identified as a match by ITEL falls within the category of materials of a 'like kind and quality' to the damaged portion of the roof.  As the policy's 'like kind and quality' requirement fits *within* the standard set by O.A.C. 3901-1-54(I)(1)(b), Auto-Owners believes that it did comply with O.A.C. 3901-1-54(I)(1)(b).  An identical match was not required under the statute nor was it required under the policy.") (emphasis in original)).

[7] This rule "does not establish a private cause of action." *Cinnamon Ridge Condo. Ass'n, Inc. v. State Farm Fire & Cas. Co.*, No. 3:22-cv-118, --- F.Supp.3d ---, 2024 WL 2214199, at *5 (S.D. Ohio May 16, 2024) (Rose, J.); *see* Ohio Admin. Code 3901-1-54(A) (". . . The provisions of this rule are intended to define procedures and practices which constitute unfair claims practices.  **Nothing in this rule shall be construed to create or imply a private cause of action for violation of this rule.**") (emphasis added).

5

explained that "O.A.C. 3901-1-54(I)(1)(b) does not require the new materials to be **identical**." *Avery v. Erie Ins. Co.*, No. 1:17-cv-562, 2018 WL 2100371, at *4 (S.D. Ohio May 7, 2018) (Dlott, J.) (emphasis added).

In support of summary judgment, Auto-Owners argues that "[t]o require [it] to replace all shingles in order to provide **a uniform appearance that had not previously existed** would clearly exceed [ ] the scope of [its] obligation under the policy that only requires a 'like kind and quality.'" (Doc. 19 PAGEID 313 (emphasis added)). Thus, it "had a **reasonable legal basis to deny coverage for more than the damaged shingles** under the Policy and the OAC, and there is **no argument that [it] should have offered to pay for an entire roof replacement**." (Id. (emphasis added)).

For the Court to grant summary judgment, there can be no dispute as to any material fact. True, it is undisputed that Auto-Owners based its decision on Reliable's finding that the shingles on the main roof were different from the shingles on the front porch patio roof. But the accuracy of Reliable's finding was—and *remains*—in dispute. This fact is material, because the obvious inference is that Auto-Owners would have been obliged to replace the Butlers' entire dwelling roof *if* the shingles were the same. And, for reasons unexplained, Auto-Owners walked back its plan to also test a shingle from the front porch patio roof. (*See* Doc. 18-6[8]).

---

[8] On May 15, 2023, Auto-Owners Field Claims Adjuster Krista Adams emailed Holly Brunswick's manager, Marki Wilber. (Doc. 18-6). The email also was addressed to Brunswick and it reads as follows:

> I picked up the shingle from Trusty Insurance on this claim. The agent met me outside and provided a shingle from the roof. I inquired about the second shingle from the recent repair, but the agent stated **"Marki told us to pull just one shingle."** I am pretty sure the back and forth emails, with the agent, we advised we needed the shingle from the roof and from recent repairs.

6

In its reply, for the purpose of "viewing the evidence in the light most favorable to the nonmoving part[ies]," Auto-Owners is willing to "assume" that the shingles are "identical," and that "the difference in appearance is solely due to weathering." (*See* Doc. 24 PAGEID 454).  Were this the case, Auto-Owners further assumes that a "match" to the main roof would be a "match" to the front porch patio addition/extension, and "would at least result in a reasonably comparable appearance over time." (*See id.*).  But would it?  In *Wright v. State Farm Fire & Cas. Co.*, an unpublished opinion, it was "uncontested" that the "unweathered replacement shakes, after a reasonable amount of time, would weather to match the old shakes."  555 F. App'x 575, 579 (6th Cir. 2014).  There is no evidence in the record to suggest that this premise is likewise "uncontested" here.  (*See* Butler depo., Doc. 18-1 PAGEID 124 (57:12–21) ("Q. Do you have any reason to disagree that the Itel came up with a match? A. Nobody ever told me.  I have no idea this was even – what came out of that.  But, again, if it's a match, that – I doubt if you're going to get distance of eight years to come and catch up when you do it like this. Q. But you agree shingles do weather over time? A. To a point, yes, depending on weather.")).[9]

---

> I still have the shingle in my car from the roof, but spoke to Holly regarding the two shingles that were to be supplied to us, and if we need to go ahead and send the shingle I have without the other shingle to compare it to?  Please let me know how you want me to proceed.

(Id. (emphasis added)).  The parties accept ITEL as the industry standard; the Court will, too, for purposes of deciding this summary judgment motion.

[9] (*See also* Butler depo., Doc. 18-1 PAGEID 123 (56:11–21) (Q. Did you tell Ron that they didn't match? A. No. It was obvious.  Me and him talked about the color was faded different from the two years' difference on the roof, not that the shingle manufacturing didn't match. Q. So the spot repairs would match over time with fade? A. Yes. Naturally it should. Now, that being said, that's speculating that it should happen that way, but – I mean, you never know if everything is exact."))

7

The Court cannot rely on hypotheticals to grant judgment as a matter of law. Because Auto-Owners has failed to presently demonstrate the absence of a dispute as to a material fact, summary judgment will be denied.

**Bad Faith.** "Under Ohio law, an insurer owes a duty of good faith to its insured in the processing, payment, satisfaction, and settlement of the insured's claims." *Marsteller v. Sec. of Am. Life Ins. Co.*, No. 3:01CV7258, 2002 WL 31086111, at *4 (N.D. Ohio Sept. 12, 2002) (citations omitted).[10] "The appropriate test to determine whether an insurance company breached this duty and denied an insurance benefit in bad faith is the **'reasonable justification'** standard." Id. (citing, *inter alia*, *Zoppo v. Homestead Ins. Co.*, 71 Ohio St.3d 552, 554, 644 N.E.2d 397, 399 (1994)) (emphasis added).

"[T]o grant a motion for summary judgment brought by an insurer on the issue of whether it lacked good faith in the satisfaction of an insured's claim, a court must find after viewing the evidence in a light most favorable to the insured, that **the claim was fairly debatable** and the refusal was premised on either the status of the law at the time of the denial or **the facts that gave rise to the claim**." *Tokles & Son, Inc. v. Midwestern Indemn. Co.*, 65 Ohio St.3d 621, 630, 605 N.E.2d 936, 943 (1992) (emphasis added).[11] "*Tokles* used the 'fairly debatable' test to determine what was 'reasonably justified' in the

---

[10] "[T]he duty of good faith extends beyond those scenarios involving an outright denial of payment for a claim." *Drouard v. United Servs. Auto. Ass'n*, No. L-06-1275, 2007 WL 707532, at ¶ 16 (Ohio App. 6 Dist. Mar. 9, 2007) (citation omitted). For example, "even in cases where a claim is ultimately paid, the insurer's 'foot-dragging' in the claims-handling and evaluation process could support a bad-faith cause of action." Id. (cleaned up).

[11] "A dispute as to **the value of the claim** does not in and of itself constitute bad faith." *Baker v. State Farm Ins. Co.*, No. 99-COA-1314, 2000 WL 699646, at *1 (Ohio App. 5 Dist. Apr. 27, 2000) (citations omitted) (emphasis added).

bad faith context." *Corbo Props., Ltd v. Seneca Ins. Co., Inc.*, 771 F.Supp.2d 877, 881 (N.D. Ohio 2011) (citing *Tokles*).[12]

The Court determines that it is unable to issue a ruling on the record before it.

Auto-Owners' initial determination to not replace the entire dwelling roof was based on a finding of mismatched shingles by a third-party adjuster. (*See* Motion, Doc. 19 PAGEID 310). This finding ostensibly was challenged by the Butlers' insurance agent, Ron Trusty. Auto-Owners' Holly Brunswick testified that Trusty told her (on May 8, 2023) that the shingles on the main roof and the front porch patio addition/extension were the same. (Brunswick Aff., Doc. 19-1 ¶ 11). Brunswick further testified that Trusty quickly reversed course and (on May 16, 2023) told her manager, Marki Wilbur, "that upon closer inspection," the shingles were *not* the same. (Id. ¶12). "**Based on this information provided**, [Brunswick] confirmed Mr. Rhoades['] findings of different shingles on the roof, and that there was no matching requirement owed for this claim to warrant a full roof replacement." (Id. ¶ 14) (emphasis added).[13]

The undersigned tends to agree with the premise that these "facts" add up to a claim that is fairly debatable. But Brunswick's testimony about what Trusty told her or her

---

[12] "Although some courts have said that *Zoppo* overruled *Tokles*, those courts have made it clear that *Tokles* was only overruled for its application of the 'intent' requirement set forth in *Motorists Mut. Ins. Co. v. Said*, 63 Ohio St.3d 690, 590 N.E.2d1228 (1992), not the application of the 'fairly debatable' test." *Corbo*, 771 F.Supp.2d at 881 (citations omitted).

[13] (*See* Motion, Doc. 19 PAGEID 310–11 ("[T]his is not a case where swift payment was made immediately after the Reliable estimate was issued, and Auto-Owners failed to investigate further. Upon receiving information from Mr. Trusty that the shingles were the exact same, Ms. Brunswick continued to investigate the claim[ ] and issued for a shingle sample to be provided for matching testing. [(Brunswick Aff., Doc. 19-1] ¶11). In effect, Auto-Owners accommodated Plaintiffs' position and investigated further to confirm if mis-matching shingles were present. But just as the Reliable estimate correctly found, Mr. Trusty confirmed that [the] roof contained different shingles, and Ms. Brunswick relied upon this confirmation to issue payment as initially estimated by Reliable. Id. ¶¶12–14.")).

manager is hearsay, which the Court cannot consider under Rule 56(c)(4)[14]. And Mr. Butler's admissible testimony suggests otherwise, as he denies that he and Trusty ever agreed "that the shingle manufacturing didn't match." (Butler depo., Doc. 18-1 PAGEID 122–23 (55:8–56:15)).[15]

For all these reasons, Auto-Owners' motion for judgment as a matter of law on the Butlers' bad faith claim will be denied, but without prejudice to renew at trial.

### III. CONCLUSION

Defendant Auto-Owners Insurance Company's Motion for Summary Judgment (Doc. 19) is **DENIED** as to Plaintiffs' breach of contract claim and **DENIED without prejudice to renew** as to Plaintiffs' bad faith claim.

**IT IS SO ORDERED.**

/s/ *Michael R. Barrett*
JUDGE MICHAEL R. BARRETT

---

[14] Fed. R. Civ. P. 56(c)(4) provides, "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, **set out facts that would be admissible in evidence**, and show that the affiant or declarant is competent to testify on the matters stated." (emphasis added).

[15] Further, counsel's argument that Auto-Owners failed to also test a shingle from the front porch patio roof amounts to an attempt to "blur the lines" between a breach of contract claim and a bad faith one. *Corbo*, 771 F.Supp.2d at 822. A plaintiff cannot "save" a bad faith claim by arguing the merits of its breach of contract claim. Id. at 884.